| CIVIL ACTION COVER SHEET | DOCKET NUMBER 21-0319 F | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **PLAINTIFF(S):** Certain Underwriters at Lloyd's London Sub. to Pol# XSZ123342 aso Rot | | **COUNTY** Suffolk |
| **ADDRESS:** c/o Skierski Jain, PLLC | | |
| 400 North Saint Paul, Suite 510 | **DEFENDANT(S):** Dello Russo Enterprises LLC d/b/a Dello Russo General Contracting; | |
| Dallas, Texas 75201 | Michael Dello Russo d/b/a Dell Russo General Contracting; Choo & Company Incorporated; | |
| **ATTORNEY:** Seth Salinger, Esq. | Isaac Blair and Company Inc.; and John Doe 1 through 10 | |
| **ADDRESS:** SETH H. SALINGER LAW | **ADDRESS:** Dello Russo Enterprises c/o Michael Dello Russo: 409 Shirley Street, Winthrop | |
| 53 Langley Road, Suite 270 | Michael Dello Russo d/b/a Dello Russo General Contracting:24 Fleet Street, Boston, Massachusetts | |
| Newton, Massachusetts 02459 | Choo & Company Incorporated c/o Aurthur Choo: 114 South Street, Boston Massachusetts 02111 | |
| **BBO:** | Isaac Blair & Co. Inc. c/o Corporation Service Company: 84 State Street, Boston, Massachusetts 021 | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04 | Negligence (Damage to Real Property) | F | ☐ YES  ☒ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?     ☐ YES  ☒ NO         Is this a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ............................................................. $_____
  2. Total doctor expenses ............................................................... $_____
  3. Total chiropractic expenses ....................................................... $_____
  4. Total physical therapy expenses ................................................ $_____
  5. Total other expenses (describe below) ...................................... $_____
                                                                      Subtotal (A): $_____

B. Documented lost wages and compensation to date ..................... $_____
C. Documented property damages to date .......................................... $1,142,476.88
D. Reasonably anticipated future medical and hospital expenses ..... $_____
E. Reasonably anticipated lost wages ................................................ $_____
F. Other documented items of damages (describe below) ................ $_____

G: Briefly describe plaintiff's injury, including the nature and extent of injury:
A tenant of Underwriters' insured was using a welder to repair a vehicle inside a garage when a fire ignited due to nearby combustibles.

**TOTAL (A-F):** $1,142,476.88

*[Stamp: SUFFOLK SUPERIOR COURT CIVIL CLERK'S OFFICE F.I.L.E.D. FEB 10 2021 MICHAEL JOSEPH DONOVAN CLERK OF COURT]*

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

**TOTAL:** $_____

Signature of Attorney/ Unrepresented Plaintiff: X _[signature]_                    Date: Feb 8, 2021

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.
Plaintiffs are unaware of any related actions.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _[signature]_                                      Date: Feb 8, 2021



## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY NO.
XSZ123342 as subrogees of PETA-GAYE AND
MICHAEL PRINN,

Plaintiffs,

v.

DELLO RUSSO ENTERPRISES LLC d/b/a
DELLO RUSSO GENERAL CONTRACTING;
MICHAEL DELLO RUSSO d/b/a DELLO
RUSSO GENERAL CONTRACTING;
CHOO & COMPANY INCORPORATED;;
ISAAC BLAIR AND COMPANY INC. and
JOHN DOE 1 through 10,

Defendants.

CIVIL ACTION NO. $\underline{21\text{-}0319F}$

NO JURY TRIAL DEMANDED

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
FILED

FEB 1 0 2021

MICHAEL JOSEPH DONOVAN
CLERK OF COURT

## COMPLAINT FOR MONEY DAMAGES

Plaintiffs, Certain Underwriters at Lloyd's, London ("Underwriters") Subscribing to Policy No.

XSZ123342 (the "Policy") as subrogees of Peta-Gaye and Michael Prinn (the "Prinns"), by and through

their counsel, hereby allege and state as follows:

## I.   PARTIES

1.      Underwriters are an unincorporated association of certain persons or entities in the business

of underwriting, subscribing to, or issuing policies of insurance.  Though the individual Underwriters

subscribing to the Policy may be located throughout the world, including Massachusetts, Underwriters'

principal place of business is in London, England.  For the purpose of this action only, Underwriters may

be contacted through Skierski Jain PLLC, 400 North Saint Paul Street, Suite 510, Dallas, Texas 75201.

2.      Defendant Dello Russo Enterprises LLC d/b/a Dello Russo General Contracting ("Dello

Russo Enterprises") is a domestic limited liability company with its principal place of business located at

304 North Street, Boston, Massachusetts 02113. Dello Russo Enterprises may be served through its registered agent, Michael Dello Russo, at 409 Shirley Street, Winthrop, Massachusetts 02152.

3. Upon information and belief, Defendant Michael Dello Russo d/b/a Dello Russo General Contracting ("Russo", collectively referred to with Dello Russo Enterprises as "Dello Russo") is an individual and resident of Boston, Massachusetts. Russo may be served at his domicile at 24 Fleet Street, Boston, Massachusetts 02113.

4. Defendant Choo & Company Incorporated ("Choo") is a domestic corporation with its principal place of business located at One Billings Road, Quincy, Massachusetts 02171. Choo may be served through its registered agent, Arthur Choo, at 114 South Street, Boston Massachusetts 02111.

5. Defendant Isaac Blair & Co. (Inc.) ("Isaac Blair") is a domestic corporation with its principal place of business located at 1 D Street, South Boston, Massachusetts 02127. Isaac Blair can be served through its registered agent, Corporation Service Company, at 84 State Street, Boston, Massachusetts 02109.

6. Upon information and belief, John Does 1 through 5 were, at all times relevant to this Complaint, employees or independent contractors of Dello Russo and are believed to have engaged in negligent acts or omissions as described herein. The identities and whereabouts for the service of process upon John Does 1 through 5 remain unknown to Underwriters. Underwriters reserve the right to amend this Complaint to more particularly identify John Does 1 through 5 as information becomes available.

7. Upon information and belief, John Does 6 through 10 were, at all times relevant to this Complaint, employees or independent contractors of Isaac Blair and are believed to have engaged in negligent acts or omissions as described herein. The identities and whereabouts for the service of process for John Does 6 through 10 remain unknown to Underwriters. Underwriters reserve the right to amend this Complaint to more particularly identify John Does 6 through 10 as information becomes available.

## II. JURISDICTION & VENUE

8. This Court exercises general subject matter jurisdiction in all civil actions for money damages. MASS. GEN. LAWS. ANN. ch. 212 § 3.

9. This Court exercises general personal jurisdiction with regard to Dello Russo, Choo, Isaac Blair, and John Does 1 through 15 (collectively "Defendants") who are each residents, domiciliaries or are registered to conduct business within the Commonwealth of Massachusetts. Furthermore, the Court exercises specific personal jurisdiction with regard to Defendants, whose acts or omissions within Suffolk County, Massachusetts gave rise to the claims and causes of action asserted herein. MASS. GEN. LAWS. ANN. ch. 223A § 2.

10. Venue is proper because one or more of the Defendants resides or has its usual place of business in and all of the events, acts and omissions giving rise to this action occurred in Suffolk County, Massachusetts.

## III. STATEMENT OF MONETARY RELIEF SOUGHT

11. Underwriters seek monetary relief of at least $1,142,476.88 including damages of any kind, penalties, costs, expenses, prejudgment interest and attorneys' fees.

## IV. CONDITIONS PRECEDENT

12. All conditions precedent to the filing of this lawsuit or Underwriters' recovery have been satisfied.

## V. FACTS

13. Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained at paragraphs 1 through 12 above.

14. At all times relevant to this action, the Prinns owned the real property and improvements located at 279 North Street, Boston, Massachusetts 02109 (the "Property"). The improvements on the Property included a four-story brick masonry building built in or prior to 1900 (the "Building").

15. On March 16, 2018, the Prinns entered a contract with Dello Russo. A true and correct copy of the Dello Russo-Prinn contract (the "Contract") is attached hereto as "**Exhibit 1**" and incorporated by reference as if set out in full herein.

16. Pursuant to the Contract, Dello Russo agreed to provide general contractor services for extensive remodeling and renovation of the Building. At all times relevant to this Complaint, John Does 1 through 5 were employees of or independent contractors hired by and working on behalf of Dello Russo.

17. Choo designed and prepared architectural and structural construction documents (the "Plans"). The Plans called for, among other things, the removal of all or a portion of the roof framing, floor framing, partition walls and structural load-bearing walls.

18. Upon information and belief, Dello Russo contracted with Isaac Blair to provide shoring services during the demolition and renovation of the Building. At all times relevant to this Complaint, John Does 6 through 10 were employees of or independent contractors hired by and working on behalf of Isaac Blair.

19. Beginning in or around March 2019, the construction project progressed to a second phase of demolition, which required the removal of all interior finishes and non-structural partition walls, removal of a stairway and the roof structure over the stairway from the first to second floors of the Building, and removal of a bathroom and roof immediately adjacent to the removed stairway.

20. The structural support for the roof extended from the south wall of the Building to an adjacent building.

21. As of the date of the events described herein, the foregoing demolition was complete. Demolition and replacement of flooring in accordance with the Choo Plans was underway, and at all times relevant to this action, the subfloor planks had been removed on the second, third and fourth floors of the Building.

22. The Choo Plans further called for the removal of certain structural load-bearing walls, including a portion of an exterior brick and masonry wall on the south side of the Building (the "Masonry

Wall"). At all times relevant to this action, that portion of the Masonry Wall identified for demolition within the Choo Plans had been removed.

23. Upon information and belief, Dello Russo, Isaac Blair or John Does 1 through 10, working on behalf and at the direction of their respective employers or pursuant to engagement as independent contractors by Dello Russo or Isaac Blair, performed the demolition work herein described, including removal of a portion of the Masonry Wall,.

24. Upon information and belief, John Does 5 through 10 designed and installed shoring to stabilize the Building as demolition progressed.

25. The components of the Building earmarked for demolition or removal provided out of plane lateral bracing to certain walls, including the Masonry Wall. Removing the components in the order and manner in which they were, in fact, removed reduced the structural integrity of the Building.

26. The shoring of the remaining components of the Building to avoid collapse was incomplete or improperly installed.

27. On the morning of June 28, 2019, one or more of John Does 1 through 5 arrived at the Building and discovered vertical cracks in the bricks of which the Masonry Wall was comprised. One or more of John Does 1 through 5 vacated the Building and notified Dello Russo.

28. Throughout the day on June 28, 2019, the cracks in the Masonry Wall grew larger.

29. During the evening of June 28, 2019 or early morning hours of June 29, 2019, the Masonry Wall failed, causing some or all of the Building to suddenly collapse (the "Collapse").

30. On July 2, 2019, the City of Boston determined the Building was dangerous and that salvage of undamaged portions was not feasible. In accordance with the determination, the Building was demolished.

31. The demolition of components of the Building required for structural integrity and the absence of sufficient or proper shoring caused the Collapse.

32. The demolition of the components of the Building as herein described either (i) comported with the demolition as directed by the Choo Plans and yet still failed to comply with accepted practices,

industry standards, applicable ordinances, law, rules or regulations or in such a manner as to create a reasonably foreseeable risk of collapse of the Building or (ii) alternatively, diverged from the Choo Plans in a manner that failed to comply accepted practices, industry standards, applicable ordinances, law, rules or regulations or that otherwise created a reasonably foreseeable risk of collapse of the Building.

33. As a result of the actions of one or more of Choo, Dello Russo, Isaac Blair or John Does 1 through 10, the Building collapsed, and the Collapse rendered the Building unsalvageable.

34. As a result of the Collapse, the Prinns incurred expenses or losses including both property damage and loss of business income and totaling no less than $1,142,476.88 (the "Expenses").

35. At all times relevant to this action, Underwriters insured the Building pursuant to the Policy. In accordance with the terms of the Policy, Underwriters paid to or on behalf of the Prinns $1,139,976.88 (the "Disbursement") for the Expenses. On behalf of the Prinns, Underwriters seek reimbursement of the Prinn's $2,500 Deductible.

36. In exchange for the Disbursements, the Prinns assigned, transferred or subrogated Underwriters to the Prinns' rights, claims, causes of action and other remedies against all persons or entities who may be liable for any loss resulting from the Expenses up to and including the amount of the Disbursements, plus any costs, fees, interest or other amounts Underwriters may be awarded. Attached hereto as "**Exhibit 2**" are the proofs of loss executed by the Prinns as well as documents supporting the Expenses.

37. Underwriters do not herein seek reimbursement of amounts paid to or on behalf of the Prinns by any entity pursuant to any insurance policy except the Policy. Underwriters do not herein seek recovery for any claims retained by the Prinns, except to the extent that Underwriters seek recovery of the Prinns' deductible under the Policy.

38. Underwriters assert the following causes of action alternatively or in combination against each of the Defendants, jointly and severally, so as to afford Underwriters the greatest likelihood of recovery:

## VI. FIRST CAUSE OF ACTION: NEGLIGENCE (JOHN DOES 1 through 5)

39. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 38 above.

40. John Does 1 through 5 owed a duty of care to the Prinns, other nearby property owners and the public traversing adjacent roadways and sidewalks to perform their work in a competent and workmanlike manner and to exercise reasonable and ordinary care while providing construction services to the Prinns.

41. One or more of John Does 1 through 5 breached their duty of care when they, among other things, (i) removed components of the Building that provided lateral bracing and structural support to the Masonry Wall necessary for the structural integrity of the Masonry Wall and Building, (ii) failed to ensure that the remaining components of the Building were properly stabilized with shoring, (iii) failed to install emergency shoring after cracks in the bricks appeared on June 28, 2019, and (iv) thereby caused the Collapse.

42. John Doe 1 through 5's acts and omissions directly and proximately caused significant damage to the Property.

43. As a result of the Collapse, the Prinns incurred the Expenses.

44. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of no less than $1,142,476.88.

## VII. SECOND CAUSE OF ACTION: RESPONDEAT SUPERIOR (DELLO RUSSO)

45. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 44 above.

46. Dello Russo is responsible for the negligence of its employees and/or independent contractors pursuant to the doctrine of *respondeat superior*. At all times relevant to this action, Dello Russo's employees and/or independent contractors, John Does 1 through 5, acted within the scope and authority of their engagement. Their acts and omissions were within the scope of their assignments to remove components of the Building while performing the renovations.

47. The employees' and/or independent contractors' acts and omissions were in furtherance of Dello Russo' business and reasonably anticipated in light of the employees' and/or independent contractors' duties.

48. Furthermore, Dello Russo exercised authority and control with regard to its employees' and/or independent contractors' acts and omissions by, among other things, directing the employees and/or independent contractors responsible for removing the components of the Building.

49. As a result of the damage to the Property, the Prinns incurred the Expenses.

50. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## VIII. THIRD CAUSE OF ACTION: NEGLIGENT HIRING, TRAINING, AND SUPERVISION (DELLO RUSSO)

51. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 50 above.

52. Dello Russo owed a legal duty to hire, supervise, and train competent employees and/or independent contractors, including John Does 1 through 5. Dello Russo's duties included a duty to reasonably and sufficiently inquire into the qualifications of its independent contractors, agents, or representatives providing construction services. Additionally, Dello Russo had a duty to use ordinary care to adequately supervise John Does 1 through 5 in the exercise of their duties, including without limitation, ensuring the structural integrity of the Building while performing the demolition and renovations.

53. Upon information and belief, Dello Russo knew or should have known that its employees' or independent contractors' qualifications precluded their engagement or, at a minimum, reasonably required Dello Russo to supervise and train John Does 1 through 5 adequately with regard to the exercise of reasonable and ordinary care to ensure the structural integrity of the Building while performing the demolition and renovations.

54. Dello Russo breached its duty of care by hiring John Does 1 through 5 or, alternatively, by failing to adequately and reasonably supervise and train John Does 1 through 5. Dello Russo breach allowed

John Does 1 through 5 to remove lateral bracing components from the Building without installing support or shoring and to otherwise act without sufficient training or supervision. Dello Russo's breach directly and proximately resulted in the damages described herein. The nature and scope of the duties of John Does 1 through 5 made the damage to the Building reasonably foreseeable.

55. As a result of the damage to the Building, the Prinns incurred the Expenses.

56. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## IX. FOURTH CAUSE OF ACTION: BREACH OF CONTRACT (DELLO RUSSO)

57. Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained in paragraphs 1 through 56 above.

58. Dello Russo and the Prinns entered into the Contract on March 16, 2018.

59. To the extent of Underwriters' Disbursement to the Prinns, the Prinns transferred their rights to recover damages from Dello Russo and other responsible parties to Underwriters.

60. Upon information and belief, the Prinns performed and continued to perform their duties under the Contract.

61. Dello Russo breached the Contract when it, among other things, failed to perform its obligations under the agreement using good and workmanlike services . Further, Dello Russo failed to comply with the applicable industry or legal standards. Dello Russo breached its agreement with the Prinns and thereby caused damage to the Property.

62. As a result of the damage to the Property, the Prinns incurred the Expenses.

63. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## X. FIFTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF GOOD AND WORKMANLIKE SERVICES (DELLO RUSSO)

64. Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained in paragraphs 1 through 63 above.

65. Through its employee, agent, representative or independent contractor, Dello Russo provided general contracting services to the Prinns in the form of demolition with the intent of renovating the Building. Dello Russo expressly or impliedly warranted that it would perform the construction services in a good and workmanlike manner.

66. Dello Russo knew or should have known that removing lateral bracing components of the Building would reduce the Building's structural integrity.

67. Dello Russo knew or should have known that failing to properly install sufficient shoring would fail to stabilize the structural integrity of the Building.

68. Dello Russo knew or should have known that failing to immediately install emergency shoring after cracks appeared in the bricks on June 28, 2019, presented an unreasonable risk of harm to both person and property, including the Building.

69. Dello Russo failed to the construction services, including demolition of component parts of the Building, in a good and workmanlike manner. Dello Russo's failure to provide good and workmanlike services resulted in the Collapse.

70. As a result of the damage to the Building, the Prinns incurred the Expenses.

71. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## XI. SIXTH CAUSE OF ACTION: NEGLIGENCE (JOHN DOES 6 through 10)

72. Underwriters incorporate by reference as if fully stated herein each of the foregoing facts, statements, and allegations contained in paragraphs 1 through 71 above.

73. John Does 6 through 10 owed a duty of care to the Prinns, other nearby property owners and the public traversing adjacent roadways and sidewalks to perform their work in a competent and workmanlike manner and to exercise reasonable and ordinary care while providing construction or shoring services to the Prinns.

74. Upon information and belief, John Does 6 through 10 breached their duty of care when they, among other things, (i) failed to consider the removed lateral bracing components when developing

the shoring plan, (ii) failed to install stabilization shoring, or (iii) failed to install emergency shoring after cracks in the bricks appeared on June 28, 2019, and (iv) thereby caused the Collapse.

75. John Does 6 through 10's acts and omissions directly and proximately caused significant damage to the Property.

76. As a result of the Collapse, the Prinns incurred the Expenses.

77. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of no less than $1,142,476.88.

## XII. SEVENTH CAUSE OF ACTION: RESPONDEAT SUPERIOR (ISAAC BLAIR)

78. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 77 above.

79. Isaac Blair is responsible for the negligence of its employees or independent contractors pursuant to the doctrine of *respondeat superior*. At all times relevant to this action, Isaac Blair's employees or independent contractors, John Does 6 through 10, acted within the scope and authority of their engagement. Their acts and omissions were within the scope of their assignments to ensure the structural integrity of the Building while providing shoring services.

80. The employees' or independent contractors' acts and omissions were in furtherance of Isaac Blair's business and reasonably anticipated in light of the employees' or independent contractors' duties.

81. Furthermore, Isaac Blair exercised authority and control with regard to its employees' or independent contractors' acts and omissions by, among other things, directing the employees or independent contractors responsible for ensuring the structural integrity of the Building while providing shoring services.

82. As a result of the damage to the Building, the Prinns incurred the Expenses.

83. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## XIII. EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING, TRAINING, AND SUPERVISION (ISAAC BLAIR)

84. Underwriters incorporate by reference as if fully stated herein each of the facts, statements, and allegations contained in paragraphs 1 through 83 above.

85. Isaac Blair owed a legal duty to hire, supervise, and train competent employees or independent contractors, including John Does 6 through 10. Isaac Blair's duties included a duty to reasonably and sufficiently inquire into the qualifications of its independent contractors, agents, or representatives providing construction services. Additionally, Isaac Blair had a duty to use ordinary care to adequately supervise John Does 6 through 10 in the exercise of their duties, including without limitation, ensuring the structural integrity of the Building while providing shoring services.

86. Upon information and belief, Isaac Blair knew or should have known that its employees' or independent contractors' qualifications precluded their engagement or, at a minimum, reasonably required Isaac Blair to supervise and train John Does 6 through 10 adequately with regard to ensuring the structural integrity of the Property while providing shoring services.

87. Isaac Blair breached its duty of care by hiring John Does 6 through 10 or, alternatively, by failing to adequately and reasonably supervise and train John Does 6 through 10. Isaac Blair's breach allowed John Does 6 through 10 to fail to install emergency shoring and to otherwise act without sufficient training or supervision. Isaac Blair's breach directly and proximately resulted in the damages described herein. The nature and scope of the duties of John Does 6 through 10 made the damage to the Building reasonably foreseeable.

88. As a result of the damage to the Building, the Prinns incurred the Expenses.

89. Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

XIV.   **NINTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF GOOD AND WORKMANLIKE SERVICES (ISAAC BLAIR)**

90.   Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained in paragraphs 1 through 89 above.

91.   Through its employees, agents, representatives or independent contractors, Isaac Blair performed shoring services in relation to the demolition of components of the Building and related renovations. Isaac Blair expressly or impliedly warranted that it would perform shoring services in a good and workmanlike manner.

92.   Isaac Blair knew or should have known failure to properly install sufficient shoring would fail to stabilize the structural integrity of the Building.

93.   Isaac Blair knew or should have known failure to immediately install emergency shoring after cracks appeared in the bricks of the Masonry Wall on June 28, 2019 presented a foreseeable risk of Collapse.

94.   Isaac Blair failed to perform shoring services within the Building in a good and workmanlike manner. Isaac Blair's failure to provide good and workmanlike services resulted in the Collapse.

95.   As a result of the Collapse and damage to the Building, the Prinns incurred the Expenses.

96.   Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

XV.   **TENTH CAUSE OF ACTION: NEGLIGENCE (CHOO)**

97.   Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained in paragraphs 1 through 96 above.

98.   Choo owed a duty to the Prinns to exercise reasonable and ordinary care when preparing the demolition the Plans for the Building.

99.   Choo breached its duty of care when it, among other things, failed to account for the age and prior renovations to the Building and, as a result thereof, prepared the demolition Plans, which directed

Dello Russo to remove component parts of the Building necessary for the structural integrity of the Masonry Wall and the Building and further failed to ensure that sufficient shoring of the Building was installed to stabilize the structural integrity of the Masonry Wall and Building.

100.   Choo's acts and omissions directly and proximately caused significant damage to the Building, resulting in the Collapse and complete loss of the Building.

101.   As a result of the damage to the Building, the Prinns incurred the Expenses.

102.   Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## XVI. ELEVENTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF GOOD AND WORKMANLIKE SERVICES (CHOO)

103.   Underwriters incorporate by reference as if fully stated herein each of the facts, statements and allegations contained in paragraphs 1 through 102 above.

104.   Choo, through its employee, agent, representative or independent contractor, designed and prepared the architectural drawings and demolition Plans for the Building. Choo expressly or impliedly warranted that it would design the architectural drawings in a good and workmanlike manner.

105.   Choo failed to design and prepare the demolition Plans within the in accordance with industry standards, practices, or applicable ordinances, rules or regulations. The Plans failed to account for the age and prior renovations of the Building, leaving the Building structurally impaired and suspectable to collapse.

106.   Choo's failure to design and prepare the Plans in a good and workmanlike manner was a direct and proximate cause of the Collapse.

107.   As a result of the damage to the Buildings, the Prinns incurred the Expenses.

108.   Underwriters, as subrogees of the Prinns, hereby demand an award of compensatory damages in the amount of at least $1,142,476.88.

## XVII. PRAYER

WHEREFORE PREMISES CONSIDERED, Underwriters hereby respectfully request judgment in favor of Underwriters and against one or more of the Defendants, individually, jointly or severally, containing the following relief:

(i) An award of compensatory damages in the amount of at least $1,142,476.88;

(ii) An award of costs of this Court, including discretionary fees to the fullest extent permitted at law and in equity;

(iii) An award of pre- and post-judgment interest at the maximum rate allowed by applicable law; and

(iv) Such other and further relief, at law or in equity, as the Court may deem just and proper.

Dated: February 8, 2021

                                                                 Respectfully submitted by,

Plaintiffs, Certain Underwriters at Lloyd's, London Subscribing to Policy No. M31389 as subrogees of New England Equities, LLC, by and through their attorney

Seth Salinger, Esq. (BBO No. 555426)
SETH H. SALINGER LAW
53 Langley Road, Suite 270
Newton, Massachusetts 02459
Telephone:     (617) 340-7821
Facsimile:     (617) 244-7640
Email:         SethSal@gmail.com

*Courtesy Copies Requested*:
Kristin H. Jain, Esq.
Texas Bar No. 24010128
SKIERSKI JAIN PLLC
400 North Saint Paul, Suite 510
Dallas, Texas 75201
Telephone:     (214) 446-0330
Facsimile:     (214) 446-0321
Email:         KHJain@SkiJain.com