UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
CAPITOL SPECIALTY INSURANCE             )
CORPORATION,                            )
                                        )
        Plaintiff,                      )
                                        )          Civil Action No.
        v.                              )          21-10939-FDS
                                        )
DELLO RUSSO ENTERPRISES, LLC,           )
and MICHAEL DELLO RUSSO,                )
                                        )
        Defendants.                     )
_____)

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

SAYLOR, C.J.

This is an insurance-coverage dispute. The central question is whether an insurer is

obligated to defend and indemnify a contractor accused of negligently causing the collapse of a

four-story brick building during renovations. Jurisdiction is based on diversity of citizenship.

Defendants Dello Russo Enterprises, LLC, and Michael Dello Russo are insured by

plaintiff Capitol Specialty Insurance Corporation. Capitol seeks a declaratory judgment stating

that it has no duty to defend or indemnify defendants in an action pending against them in

Massachusetts Superior Court for property-damage claims arising out of a building collapse.

Defendants have counterclaimed, seeking a declaration that Capitol has such a duty to defend

and indemnify. Capitol is defending in the underlying matter subject to a reservation of rights.

The parties have cross-moved for partial summary judgment on the issue of Capitol's

duty to defend. Capitol has also moved for summary judgment on its duty to indemnify. For the

following reasons, the Court concludes that Capitol has a duty to defend, and that the issue of

indemnity is not ripe for resolution.  Accordingly, defendants' motion for partial summary judgment will be granted, and Capitol's motion for summary judgment will be denied without prejudice.

## I.    **Background**

### A.    **Factual Background**

The following facts are as set forth in the record and appear to be undisputed.

#### 1.    **The Parties**

Dello Russo Enterprises, LLC is a limited liability company located in Boston, Massachusetts.  All members of the LLC are residents of Massachusetts.

Michael Dello Russo is a Massachusetts resident and home-improvement contractor. (*See* Maselek Aff. Ex. C ("Home Improvement Contract") at 1).

Capitol Specialty Insurance Corporation is a Wisconsin insurance corporation.  From November 1, 2018, through November 1, 2019, Capitol insured Dello Russo Enterprises and Michael Dello Russo (collectively, "Dello Russo") under a commercial general liability policy. (*See* Compl. Ex. B ("Insurance Policy")).[1]

#### 2.    **The Insurance Policy**

Under the policy, Capitol is obligated to pay "those sums that [Dello Russo] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  (*Id.* at 20).[2]  The policy also provides that Capitol has a duty to defend Dello Russo "against any 'suit' seeking those damages."  (*Id.*).  "Property damage" is defined in the policy as follows:

---

[1] Under the policy, Dello Russo Enterprises, LLC is a named insured.  The parties agree that Michael Dello Russo is also insured under the policy.

[2] Page numbers for the Insurance Policy are as designated in the docket.

**17.** "Property damage" means:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 34).  The policy applies to "property damage" only if it is caused by an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at 20, 34).

In addition, as relevant here, the policy excludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," or to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  (*Id.* at 23-24).  Under the policy, "your work" means "[w]ork or operations performed by you or on your behalf," and "[m]aterials, parts or equipment furnished in connection with such work or operations."  (*Id.* at 35).

### 3.     The Underlying Claims

On February 10, 2021, Certain Underwriters at Lloyd's, London filed a complaint for money damages in Massachusetts Superior Court, as subrogees of Peta-Gaye and Michael Prinn.  The complaint alleges that a building owned by the Prinns had collapsed as a result of the actions of one or more of the underlying defendants, including Dello Russo.[3]  The following facts appear

---

[3] The other defendants in the state-court action are:  Choo & Company Incorporated; Isaac Blair & Company Inc.; John Does 1 through 5 (alleged employees or independent contractors of Dello Russo); and John Does 6 through 10 (alleged employees or independent contractors of Isaac Blair).  Against Dello Russo or its alleged employees or independent contractors, the underlying complaint asserts claims of negligence (Count 1), respondeat

as alleged in that complaint in the underlying state action (the "Underlying Complaint"):

**14.**  At all times relevant to this action, the Prinns owned the real property and improvements located at 279 North Street, Boston, Massachusetts 02109 (the "Property").  The improvements on the Property included a four-story brick masonry building built in or prior to 1900 (the "Building").

**15.**  On March 16, 2018, the Prinns entered a contract with Dello Russo. . . .

**16.**  Pursuant to the Contract, Dello Russo agreed to provide general contractor services for extensive remodeling and renovation of the Building.[4]  At all times relevant to this Complaint, John Does 1 through 5 were employees of or independent contractors hired by and working on behalf of Dello Russo.

**17.**  Choo [& Company] designed and prepared architectural and structural construction documents (the "Plans").  The Plans called for, among other things, the removal of all or

---

superior (Count 2), negligent hiring, training, and supervision (Count 3), breach of contract (Count 4), and breach of the implied warranty of good and workmanlike services (Count 5).

[4] The home-improvement contract, which was attached as an exhibit to the Underlying Complaint, listed the entire scope of work to be performed by Dello Russo as follows:

**1.  PERMITS** – Dello Russo will provide all required permits (demo, street occupancy, fire department, dumpster etc)
**2.  Demolition** – Demo entire interior residential space - down to floor joists, demo and removal of brick oven in basemnt [sic] level
**3.  Exploratory Demo** – basement level structural Inspection
**4.  Debris Removal** – Dumpster rental, staging rental, FIRE RATED debris shoot, dump truck (Dello Russo General Contractors), dumpsite fees.
**5.  Structural** – removal of all NON LOAD BEARING walls, identify all structural and bearing members. **\*Does not include removal of joists** - to be removed as necessary during re construction.
**6.  Electrical** – Electrical demo and temp lighting (to be preformed [sic] by a licensed electrician)
**7.  Plumbing** – Plumbing demo and temp bathroom with temp water supply (to be preformed [sic] by a licensed plumber)
**8.  Misc Construction Materials and Equipment** – demo shoring equipment etc
**9.  Inspections** – Dello Russo will be responsible and present for all building inspections (inspector Site Visit)

(Home Improvement Contract at 4).  The home-improvement contract further provided that Dello Russo agreed to perform this work and furnish the specified labor and material for an estimated total sum of $55,000 to $65,000.  (*Id.* at 1-2).

a portion of the roof framing, floor framing, partition walls and structural load-bearing walls.

18. Upon information and belief, Dello Russo contracted with Isaac Blair to provide shoring services during the demolition and renovation of the Building.  At all times relevant to this Complaint, John Does 6 through 10 were employees of or independent contractors hired by and working on behalf of Isaac Blair.

19. Beginning in or around March 2019, the construction project progressed to a second phase of demolition, which required the removal of all interior finishes and non-structural partition walls, removal of a stairway and the roof structure over the stairway from the first to second floors of the Building, and removal of a bathroom and roof immediately adjacent to the removed stairway.

20. The structural support for the roof extended from the south wall of the Building to an adjacent building.

21. As of the date of the events described herein, the foregoing demolition was complete. Demolition and replacement of flooring in accordance with the Choo Plans was underway, and at all times relevant to this action, the subfloor planks had been removed on the second, third and fourth floors of the Building.

22. The Choo Plans further called for the removal of certain structural load-bearing walls, including a portion of an exterior brick and masonry wall on the south side of the Building (the "Masonry Wall").  At all times relevant to this action, that portion of the Masonry Wall identified for demolition within the Choo Plans had been removed.

23. Upon information and belief, Dello Russo, Isaac Blair or John Does 1 through 10, working on behalf and at the direction of their respective employers or pursuant to

engagement as independent contractors by Dello Russo or Isaac Blair, performed the demolition work herein described, including removal of a portion of the Masonry Wall.

24. Upon information and belief, John Does 5 through 10 designed and installed shoring to stabilize the Building as demolition progressed.

25. The components of the Building earmarked for demolition or removal provided out of plane lateral bracing to certain walls, including the Masonry Wall. Removing the components in the order and manner in which they were, in fact, removed reduced the structural integrity of the Building.

26. The shoring of the remaining components of the Building to avoid collapse was incomplete or improperly installed.

27. On the morning of June 28, 2019, one or more of John Does 1 through 5 arrived at the Building and discovered vertical cracks in the bricks of which the Masonry Wall was comprised. One or more of John Does 1 through 5 vacated the Building and notified Dello Russo.

28. Throughout the day on June 28, 2019, the cracks in the Masonry Wall grew larger.

29. During the evening of June 28, 2019 or early morning hours of June 29, 2019, the Masonry Wall failed, causing some or all of the Building to suddenly collapse (the "Collapse").

30. On July 2, 2019, the City of Boston determined the Building was dangerous and that salvage of undamaged portions was not feasible. In accordance with the determination, the Building was demolished.

31. The demolition of components of the Building required for structural integrity and the absence of sufficient or proper shoring caused the Collapse.

**32.** The demolition of the components of the Building as herein described either (i) comported with the demolition as directed by the Choo Plans and yet still failed to comply with accepted practices, industry standards, applicable ordinances, law, rules or regulations or in such a manner as to create a reasonably foreseeable risk of collapse of the Building or (ii) alternatively, diverged from the Choo Plans in a manner that failed to comply [with] accepted practices, industry standards, applicable ordinances, law, rules or regulations or that otherwise created a reasonably foreseeable risk of collapse of the Building.

**33.** As a result of the actions of one or more of Choo, Dello Russo, Isaac Blair or John Does 1 through 10, the Building collapsed, and the Collapse rendered the Building unsalvageable.

(Underlying Complaint at 4-7).[5]  The Underlying Complaint further alleges that as a result of the building's collapse, "the Prinns incurred expenses or losses including both property damage and loss of business income and totaling no less than $1,142,476.88."  (*Id.* at 7).  Plaintiff in the Underlying Complaint seeks monetary relief "of at least" that amount, "including damages of any kind."  (*Id.* at 4).

### B. Procedural Background

On June 4, 2021, Capitol filed this declaratory judgment action against Dello Russo.[6] The complaint seeks a declaratory judgment stating that Capitol owes no duty to defend or indemnify Dello Russo for property-damage claims asserted against him in the underlying

---

[5] Page numbers for the Underlying Complaint are as designated in the docket.

[6] The complaint also lists the plaintiff in the underlying case—Certain Underwriters at Lloyd's, London Subscribing to Policy No. XSZ123342 as subrogees of Peta-Gaye and Michael Prinn ("Underwriters")—as an additional defendant in the present action.  (*See* Compl. at 1-2).  Capitol voluntarily dismissed Underwriters from this action on August 18, 2021.  (*See* Dkt. No. 8).

action.

On August 23, 2021, Dello Russo counterclaimed, seeking a declaration that Capitol has a duty to defend and indemnify Dello Russo in connection with the underlying action.

The parties have cross-moved for summary judgment.  Dello Russo has moved for summary judgment on the duty to defend, and Capitol has moved for summary judgment on the duties to defend and indemnify.

## II.    <u>Standard of Review</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

III.   **Analysis**

A.       **General Insurance Policy Construction**

Under Massachusetts law, "[t]he proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury." *U.S. Liability Ins. Co. v. Benchmark Constr. Servs., Inc.*, 797 F.3d 116, 119 (1st Cir. 2015) (quoting *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 350 (2012)).  An insurance policy is to be construed "under the general rules of contract interpretation," starting with "the actual language of the policies, given its plain and ordinary meaning." *AIG Property Cas. Co. v. Cosby*, 892 F.3d 25, 27 (1st Cir. 2018) (quoting *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000)). "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable . . . without according undue emphasis to any particular part over another." *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355-56 (2009) (internal quotation marks and citations omitted).

When in doubt, a court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Id.*  Any ambiguities in an insurance policy "are to be construed against the insurer and in favor of the insured." *U.S. Liability Ins. Co.*, 797 F.3d at 120.  "An ambiguity arises when there is more than one rational interpretation of the relevant policy language," but "is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other." *Boston Gas Co.*, 454 Mass. at 356 n.32 (internal citations omitted).  "While the insured bears the burden of establishing coverage, . . . the burden is on the insurer to establish the applicability of an exclusion." *Finn v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. 690, 693 (2008).

B.       **Cross-Motions for Summary Judgment on Duty to Defend**

A duty to defend is triggered when the facts as alleged in the relevant complaint, and as

9

known or readily knowable by the insurer, "are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010). The relevant facts need not "specifically and unequivocally" make out a claim that falls within the insurance coverage, but need only show "a possibility" that the liability is within the coverage. *Id.* at 200-01 (internal quotation marks omitted). "The process is not one of looking at the legal theory enunciated by the pleader but of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Id.* at 201 (internal quotation marks omitted). However, when the relevant allegations "lie expressly outside of the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Id.* (internal quotation marks omitted).

As relevant here, Capitol has a duty to defend if the claims against Dello Russo allege the following: "property damage," caused by an "occurrence," that does not fall within either of the policy's relevant "business risk" exceptions. Each will be addressed in turn.

### 1.  <u>Whether the Claims Allege "Property Damage" Arising out of an "Occurrence"</u>

As noted, the policy covers damages payable because of "'property damage' to which this insurance applies." (Insurance Policy at 20). The policy defines "property damage" to include "[p]hysical injury to tangible property, including all resulting loss of use of that property." (*Id.* at 34). It appears clear that the Underlying Complaint against Dello Russo states a claim based upon property damage. (*See* Underlying Complaint at 7 ("As a result of the actions of one or more of [the defendants], the [b]uilding collapsed, and the [c]ollapse rendered the [b]uilding unsalvageable.")). And while "[t]he qualifying phrase, 'to which this insurance

10

applies,' underscores the basic notion that the premium paid by the insured does not buy

coverage for all property damage but only for that type of damage described in the policy[,] . . .

'[t]he limits on coverage are set forth in the exclusion clauses of the policy, whose function it is

to restrict and shape the coverage *otherwise afforded*.'"  *Mello Const., Inc. v. Acadia Ins. Co.*, 70

Mass. App. Ct. 1104 (2007) (Table) (emphasis added) (quoting *Lusalon, Inc. v. Hartford Acc. &*

*Indem. Co.*, 400 Mass. 767, 770 n.5 (1987)); *see also Fontaine Bros. v. Acadia Ins. Co.*, 2019

WL 4120285, at *7 (D. Mass. Aug. 29, 2019) ("Any bar to coverage is best addressed under the

business risk exclusions.").

     The next question is whether the property damage was caused by an "occurrence," which

the policy defines, in part, as "an accident."  (Insurance Policy at 20, 34).  "The term 'accident'

is to be broadly construed in a policy insuring against damage by accident.  In its common

signification the word means an unexpected happening without intention or design."  *Beacon*

*Textiles Corp. v. Employers Mut. Liab. Ins. Co. of Wis.*, 355 Mass. 643, 645-46 (1969) (internal

citations omitted).  The term may also include "[u]nintended or unforeseen consequences of

reckless or negligent acts."  *Liberty Mut. Ins. Co. v. Tabor*, 407 Mass. 354, 358 (1990); *see also*

*Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 84 (1984) ("[T]he resulting injury which

ensues from the volitional act of an insured is still an 'accident' within the meaning of an

insurance policy if the insured does not specifically intend to cause the resulting harm or is not

substantially certain that such harm will occur.").

     However, "[u]nder Massachusetts law, 'faulty workmanship fails to constitute an

accidental occurrence in a commercial general liability policy.'"  *Friel Luxury Home Const., Inc.*

*v. ProBuilders Specialty Ins. Co. RRG*, 2009 WL 5227893, at *5 (D. Mass. Dec. 22, 2009)

(quoting *American Home Assur. Co. v. AGM Marine Contractors, Inc.*, 379 F. Supp. 2d 134, 136

(D. Mass. 2005), *aff'd,* 467 F.3d 810 (1st Cir. 2006)).  "The rationale for denying coverage to faulty workmanship under the 'occurrence' language is that 'a failure of workmanship does not involve the fortuity required to constitute an accident.'"  *Id.* (quoting 9A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 129:4).

While "'[f]aulty workmanship, alone, is not an 'occurrence,'' coverage may lie when 'faulty workmanship . . . causes an accident.'"  *Fontaine Bros.*, 2019 WL 4120285, at *6 (quoting *Davenport v. U.S. Fid. & Guar. Co.*, 56 Mass. App. Ct. 1109 (2002) (Table)); *see also Pacific Indem. Co. v. Lampro*, 2013 WL 9902530, at *5 (Mass. Super. Mar. 14, 2013) ("In essence, an 'occurrence' in a commercial general liability policy will not provide coverage if faulty workmanship is the accident, but will provide coverage if faulty workmanship causes the accident and there is collateral damage to property other than the insured's work product.").

Here, the home-improvement contract makes clear—and Capitol does not dispute—that the Prinns did not hire Dello Russo to demolish the entire building.  (*See* Home Improvement Contract at 4; Pl.'s Mem. Supp. Mot. Summ. J. at 17).  Nor does the Underlying Complaint allege that Dello Russo or any of its subcontractors in fact demolished the entire building.  (*See generally* Underlying Complaint at 4-7).  In other words, the Underlying Complaint does not allege that an improperly performed demolition *was* the accident.

Rather, the Underlying Complaint alleges that as a result of Dello Russo's faulty workmanship during renovations, the building partially collapsed, requiring the demolition of the remaining structure.  (*See id.*).  In other words, the Underlying Complaint alleges that Dello Russo's negligence caused an accident.  Accordingly, the claims against Dello Russo allege

"property damage" caused by an "occurrence."[7]

## 2.    Whether an Exclusion Applies

Capitol contends that even if the Underlying Complaint alleges property damage caused by an occurrence, the insurance policy's "business risk" exclusions nevertheless preclude coverage.[8]  Under the policy, provisions (j)(5) and (j)(6) exclude coverage for claims alleging property damage to "[t]hat *particular part* of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations," or to "[t]hat *particular part* of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (Insurance Policy at 23-24 (emphases added)).[9]

"These provisions reflect the well recognized principle that commercial general liability coverage does not insure the insured's work itself; rather, it insures consequential damages stemming therefrom." *E.H. Spencer & Co., LLC v. Essex Ins. Co.*, 2009 WL 2231222, at *2 (Mass. Super. May 27, 2009), *aff'd,* 79 Mass. App. Ct. 1109 (2011); *see also Pacific Indem. Co.*

---

[7] Having held that the claims against Dello Russo allege property damage caused by an occurrence, the Court need not decide whether alleged consequential damages in the Underlying Complaint, such as loss of business income, independently trigger a duty to defend.  (*See* Defs.' Opp. Pl.'s Mot. Summ. J. at 6-10).

[8] The complaint also asserts that the allegations of the Underlying Complaint fall within the policy's contractual liability exclusion, which provides that the insurance does not apply to "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (*See* Compl. ¶ 19; Insurance Policy at 21).  However, "where a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument," the First Circuit's "raise-or-waive" rule applies.  *Rocafort v. IBM Corp.*, 334 F.3d 115, 121 (1st Cir. 2003); *see also Mackey v. Town of Tewksbury*, 433 F. Supp. 3d 116, 163 (D. Mass. 2020) (The "district court is free to disregard arguments [on summary judgment] that are not adequately developed." (quoting *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999))).  In any event, because Dello Russo could be found liable in tort in the underlying matter—independent of any liability arising from the alleged breach of contract—the exclusion does not apply.  (*See* Insurance Policy at 21 ("This exclusion does not apply to liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement.")).

[9] As previously noted, "your work" means "[w]ork or operations performed by you or on your behalf," and "[m]aterials, parts or equipment furnished in connection with such work or operations."  (Insurance Policy at 35).

*v. Lampro*, 86 Mass. App. Ct. 60, 66 (2014) ("The goal of a general liability policy 'is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products.'" (quoting *Commerce Ins. Co. v. Betty Caplette Builders, Inc.,* 420 Mass. 87, 92 (1995))).

Accordingly, "Massachusetts courts continue to construe exclusions that are limited to 'that particular part of the property' as being limited to 'coverage for the work product of the insured but not for damage to larger units of which the insured's work product is but a component.'" *General Cas. Co. of Wisconsin v. Five Star Bldg. Corp.*, 2013 WL 5297095, at *6 n.5 (D. Mass. Sept. 19, 2013) (quoting *U.S. Fire Ins. v. Peerless Ins. Co.*, 2004 WL 1515591, at *8 (Mass. Super. June 15, 2004)).

For example, in *Frankel v. J. Watson Co.*, 21 Mass. App. Ct. 43 (1985), the insured was hired to move an old farmhouse to an alternate site, construct a roadway to the new site, install underground utilities and a new septic system, and pour and construct a new concrete foundation. *Id.* at 44.  After the superstructure was moved, it began to sag, due to the insured's allegedly faulty construction of the foundation.  *Id.*  The court held that property damage to the superstructure of the farmhouse was not excluded under the policy's exclusionary clause, however, because "the 'particular part' of the property affected by the alleged faulty workmanship of the insured was the foundation," and not the entire farmhouse.  *See id.* at 46.[10]

By contrast, in *Jet Line Services, Inc. v. American Employers Insurance Co.*, 404 Mass. 706 (1989), where an insured was hired to clean and repair a petroleum storage tank—which subsequently exploded—the court held that "the words 'that particular part of any property . . .

---

[10] Capitol suggests that *Frankel* is no longer good law.  (*See* Pl.'s Opp. Defs.' Mot. Summ. J. at 10 n.11).  The Court, however, disagrees with that suggestion for the same reasoning set forth by Judge Casper in *General Casualty Co. of Wisconsin v. Five Star Building Corp.  See* 2013 WL 5297095, at *6 n.5.

on which operations are being performed' refer[red] to the entire tank and not just to the bottom of the tank that [the insured was] cleaning at the moment of the explosion." *Id.* at 711.

Here, the Underlying Complaint alleges that "Dello Russo agreed to provide general contractor services for extensive remodeling and renovation of the Building." (Underlying Complaint at 5).[11]   Capitol contends that as the alleged general contractor, "Dello Russo had control over the entire premises," and thus "'that particular part' of property means the entire project." (*See* Pl.'s Mem. Supp. Mot. Summ. J. at 17).

"Coverage under the exclusionary endorsement," however, "is dependent upon the factual situation," *Lusalon*, 400 Mass. at 771, and this "case turn[s] on what work [Dello Russo] was *hired* to perform," *see Mills Constr. Corp. v. Nautilus Ins. Co.*, 2019 WL 1440404, at *6 (D. Mass. Mar. 31, 2019) (emphasis added) (citing *E.H. Spencer & Co.*, 2009 WL 2231222, at *2).

Unlike the insured general contractors in several of the cases relied on by Capitol, Dello Russo was not hired to construct, renovate, or demolish an entire building.[12]   For example, as set

---

[11] For purposes of this motion, the Court does not consider allegations contained within the Prinns' intervenor complaint filed in the present action. (*See* ECF 25-1). In Massachusetts, there are two "narrow exceptions" to the rule that the duty to defend is determined solely by considering the allegations in the underlying complaint and any known or readily knowable facts: first, "where there is *undisputed*, readily knowable, and publicly available information in court records that demonstrates that the insurer has no duty to defend," and second, "where there is an *undisputed* extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action." *See Metropolitan Prop. & Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 358 (2011) (emphases added) (internal citations and quotations omitted). The Prinns' intervenor complaint does not contain undisputed facts, but rather allegations that will be litigated at the trial of the underlying action.

[12] Here, the contract between Dello Russo and the Prinns was attached as an exhibit to the Underlying Complaint. Thus, to the extent that any of the allegations in the Underlying Complaint concerning which tasks Dello Russo was contractually obligated to perform contradict the contract, the terms of the contract control. *See Cheng v. Neumann*, 51 F.4th 438, 445 (1st Cir. 2022) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

*Lusalon*, a case relied on by Capitol, does not require a different conclusion. There, the Massachusetts Supreme Judicial Court rejected the insured subcontractor's argument "that the allegations concern tasks outside its contract responsibilities and damage to property which was not part of Lusalon's work product." 400 Mass. at 773. "At the time the issue of a duty to defend was put before the motion judge," however, that "claim was precluded" because a master had already found—and Lusalon had not disputed—that the tasks at issue were in fact Lusalon's responsibility. *Id.* Here, by contrast, there have been no findings of fact in the underlying matter regarding Dello Russo's contractual scope of work.

forth in the contract between Dello Russo and the Prinns, while Dello Russo was required to provide "demo shoring equipment," he was not responsible for demolishing or removing any of the building's load-bearing walls.  (*See* Home Improvement Contract at 4).  Nor was Dello Russo responsible under the contract for demolishing the building's exterior, or in any other way performing work relating to the building's exterior walls, windows, foundation, or roof.  (*See id.*).  Rather, under the contract, Dello Russo's tasks included, in part, removing all *non*-load-bearing walls, and demolishing the building's "entire *interior* residential space."  (*Id.* (emphasis added)).  In other words, Dello Russo was contractually obligated to work on only a "particular part" of the building:  its interior.

Capitol, however, contends that the "fact that the Prinns did not hire Dello Russo to demolish the [b]uilding's exterior is not dispositive."  (Pl.'s Mem. Supp. Mot. Summ. J. at 17).  "[W]hat is dispositive," according to Capitol, "is that the [b]uilding's exterior was an inseparable part of the [b]uilding that Dello Russo was hired to renovate," and thus the policy's language concerning the "particular part" of the property is not limited to the building's interior.  (*See id.*).  The policy does not define the phrase "[t]hat particular part," however, and any ambiguity must be construed against the insurer, so as to narrow the exception and provide coverage.  *Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass 427, 431 (1965) ("Exclusions from coverage are to be strictly construed.").  Accordingly, the Court holds that the words "[t]hat particular part" refer only to the building's interior, and thus the "claimed damages to the superstructure [do] not fall within [that] exclusionary language."  *See Frankel*, 21 Mass. App. Ct. at 46.

In sum, and for the reasons previously set forth, "[Capitol] has a duty to defend [Dello Russo] against the complaints unless and until it is determined that the only actual damage was to property on which [Dello Russo] performed faulty work."  *See National Union Fire Ins. Co. of*

*Pittsburgh, PA v. Modern Cont'l Const. Co., Inc.*, 2009 WL 6376180, at *4 (Mass. Super. Dec. 11, 2009) (citing *Simplex Techs., Inc. v. Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999)).[13] Dello Russo's motion for partial summary judgment on the duty to defend will be granted, and Capitol's motion for summary judgment will be denied to the same extent.

### C.   Motion for Summary Judgment on Duty to Indemnify

Capitol also seeks a declaration that it has no duty to indemnify Dello Russo.  "A declaration regarding indemnification, however, is untimely and must wait until the underlying action has been resolved."  *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 152 F. Supp. 3d 15, 19 (D. Mass. 2015).  "Whereas an insurer's duty to defend is 'measured by the allegations of the underlying complaint,' the duty to indemnify is 'determined by the facts, which are usually established at trial.'"  *Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 372 (D. Mass. 2015) (quoting *Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989)).  "Accordingly, a declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes."  *Id.*  Capitol's motion for summary judgment on its duty to indemnify will therefore be denied.

### IV.   Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED as to the issue of the duty to defend, and DENIED without prejudice as to the issue of the duty to indemnify.

---

[13] "Because '[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not,' general rule in Massachusetts in the general liability insurance context is that 'an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint.'" *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 738 (2013) (quoting *Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001)) (alteration in original).  "This is known as the 'in for one, in for all' or the 'complete defense' rule." *Id.*

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  January 24, 2023                    Chief Judge, United States District Court